

FILED
JUL -6 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **Timothy Jones and Shemika Brown, on behalf of themselves and others similarly situated**<br><br>**Plaintiffs,**<br><br>v.<br><br>**Meridian Senior Living, LLC; Grove AL, LLC, d/b/a/ Windsor Senior Living; Virginia Retirement Services of Chesterfield, LLC, d/b/a Magnolias of Chesterfield; and Patrick Hines,**<br><br>**Defendants.** | CIVIL ACTION NO. 3:16cv569 |

## COMPLAINT

Plaintiffs Timothy Jones ("Jones") and Shemika Brown ("Brown"), (collectively "Plaintiffs"), respectfully move for judgment against Meridian Senior Living, LLC ("Meridian"), Grove AL, LLC d/b/a Windsor Senior Living ("Windsor"), Virginia Retirement Services of Chesterfield, LLC d/b/a/ Magnolias of Chesterfield ("Magnolias"), and Patrick Hines ("Hines"), (collectively "Defendants"), on behalf of themselves and all others similarly situated:

### Introduction

1. This is a claim for unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., (hereinafter "the Act" or "FLSA"); retaliation in violation of the FLSA; breach of contract; unpaid wages under the doctrine of *quantum meruit*; and unpaid wages under Va. Code § 40.1-29.

1

## Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) and (c) in that the Plaintiffs may bring this action in any appropriate United States District Court. Plaintiffs seek this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3(B)(4) since the acts and omissions giving rise to this lawsuit have taken place in the Eastern District of Virginia.

4. Defendants are subject to personal jurisdiction in the Commonwealth of Virginia.

## Parties

5. Jones is a resident of Virginia who was employed by Defendants as a Certified Nursing Assistant ("CNA") and Business Manager. Jones was an "employee" as contemplated by the FLSA and Va. Code § 40.1-29.

6. Brown is a resident of Virginia who was employed by Defendants as a Personal Care Aide ("PCA"). Brown was an "employee" as contemplated by the FLSA and Va. Code § 40.1-29.

7. Meridian is a North Carolina limited liability company with facilities located throughout the country, including facilities located in Richmond and Chesterfield. Meridian meets the definition of "employer" as contemplated by the FLSA and Va. Code § 40.1-29.

8. Windsor is a Virginia Limited Liability Company with a facility located in Richmond. Windsor meets the definition of "employer" as contemplated by the FLSA and Va. Code § 40.1-29.

9. Magnolias is a Virginia Limited Liability Company with a facility located in

Richmond. Magnolias meets the definition of "employer" as contemplated by the FLSA and Va. Code § 40.1-29.

10. Upon information and belief, Magnolias' registration with the Virginia State Corporate Commission is not current. Plaintiffs are without sufficient information to determine whether Magnolias has been reformed as a different business entity.

11. Hines was an Executive Director at Meridian's Windsor Senior Living facility in Richmond and Meridian's Magnolias of Chesterfield facility in Chesterfield. Hines had control over the terms and conditions of Plaintiffs' employment and had authority to hire, fire, and determine Plaintiffs' pay rates. Hines meets the definition of "employer" as contemplated by the FLSA.

12. Meridian, Windsor, Magnolias, and Hines were engaged in the business of providing care and living services to senior citizens. Upon information and belief, Meridian, Windsor, and Magnolias are related entities. Meridian Senior Living is the entity listed on Plaintiffs' paystubs. Meridian's website lists Windsor Senior Living and Magnolias of Chesterfield as related entities. Upon information and belief Meridian, Windsor, Magnolias, and Hines are an integrated or joint employer of Plaintiffs.

13. Meridian, Windsor, Magnolias, and Hines are jointly and severally liable for the acts complained of herein.

### Factual Allegations

14. Jones was employed by Defendants from around May 2014 to around August 2015. Jones was hired as a CNA at Meridian's Windsor Senior Living facility ("Windsor facility") in Richmond, Virginia. As a CNA, Jones provided basic care to residents and assisted

them in daily activities such as feeding, bathing, and recreation.

15. In or around August 2014, Jones moved to Meridian's Magnolias of Chesterfield facility ("Magnolias facility") in Chesterfield, Virginia.

16. In or around September 2014, Jones was promoted to the position of Business Manager at the Magnolias facility. As a Business Manager, Jones assisted Executive Director Hines, processed payroll payments, approved time reports, and conducted orientation for new hires.

17. Brown was employed by Defendants from around July 2014 to around January 2016. Brown worked as a PCA at Meridian's Magnolias facility in Chesterfield, Virginia. As a PCA, Brown prepared meals, assisted with cleaning, assisted residents with personal care and hygiene, and interacted with residents and their families.

18. Hines was an Executive Director at both the Windsor and Magnolias facilities. Jones worked under Hines in his time at both the Windsor and Magnolias facilities. Brown worked under Hines at the Magnolias facility.

19. At all times, Plaintiffs were paid on an hourly basis.

20. During their employment, Plaintiffs regularly worked more than 40 hours per week.

21. However, Plaintiffs were not paid for all hours worked over 40 per week.

22. Plaintiffs often worked hours off-the-clock. Hines would tell them clock out, but to stay and finish their work. When Plaintiffs complained, Hines told them Defendants could not pay overtime and that employees were lucky to be working 40 hours.

23. On many occasions, Plaintiffs noticed that their checks did not include all hours

4

they had worked.

24. As the Business Manager, Jones often had other employees tell him that their checks were short hours as well. Jones began printing out hours reports for employees so they would know how much they should receive on their next paycheck. However, between the time Jones printed out the hours reports and when employees received their paychecks, time was taken out of their checks.

25. Jones reported the check shortages to Hines. Hines blamed the discrepancy on Jones and said Jones did not know how to use the payroll and timekeeping software that Defendant used through ADP, a third-party payroll processing service.

26. Defendants sent Jones to a related Meridian facility in North Carolina to receive training on the ADP software. While there, Jones told his instructor (a Meridian Business Manager at the North Carolina facility) that he was concerned about their software because employees kept complaining to him about their hours being short. The Meridian instructor told Jones that the software keeps track of all entries made and showed Jones how to run what she called an audit report ("Audit Report"). Jones and the instructor ran an Audit Report which revealed that Executive Director Hines had made hundreds of "edits" to employees' time records to delete and change employees' hours to Defendants' advantage and to the detriment of employees.

27. The instructor then called Regional Vice President Chanin McElroy on speakerphone with Jones present on the call. The instructor reported to McElroy that she had discovered Hines changing entries to deduct time from employees' time records and faxed the Audit Report to McElroy. Upon information and belief, McElroy read the over the Audit Report.

On the call, McElroy told the instructor not to believe anything Jones said because he was trying to get Hines in trouble. The instructor responded that it was not Jones's statements, but the Audit Report that revealed Hines's time edits.

28. Jones also tried to explain to McElroy that he and the instructor had discovered that Hines's pay deductions were reflected in the ADP records. McElroy would not listen to Jones and told him if he wanted to keep his job, he needed to focus on his training and stop trying to get Hines in trouble.

29. Upon information and belief, shortly after the call with McElroy, Hines began approaching employees and asking them to sign blank "time adjustment" sheets stating that the employees had authorized Hines to adjust their time.

30. When he returned to the Magnolias facility, Jones confronted Hines about stealing wages from employees. Hines responded that the missing time was due to a "glitch" in the system. Jones then showed Hines the Audit Report, which included Hines's username next to the deleted and revised time entries. After being confronted with the Audit Report, Hines admitted that he had been the one changing employees' time entries.

31. Hines went on to tell Jones that executive management gets a bonus for keeping costs down. Hines stated that if they kept costs down, he got a $20,000 bonus, McElroy got a $40,000 bonus, and Senior Vice President Cathy Croft ("Croft") got a $60,000 bonus. Hines told Jones that if he wanted to be an Executive Director in the future, he would have to learn how to "play the game."

32. Jones then called McElroy to discuss the stolen wages and told her that employees should be paid back for the time that was stolen from them. McElroy said she agreed, but then

6

proceeded to put Hines in charge of "fixing" the time alterations.

33. Hines went into his office for a few minutes to purportedly "fix" the time alterations. Hines declared that he had corrected the time alterations and paid the employees back. Upon information and belief, Hines only paid a few employees back, and even then, only for a fraction of the wages that were stolen. Upon information and belief, other employees received no compensation at all for the wages that were stolen from them.

34. Plaintiffs received no compensation for the wages that were stolen from them.

35. When Brown found out Hines had been altering records to steal wages from employees' paychecks, she called Human Resources to report it. Brown left a message, but no one called her back.

36. Jones also reported the wage theft to Senior Vice President Croft and Human Resources Director Brad Coley. Jones emailed them, but never received a reply.

37. Defendants' illicit time alterations deprived employees of their wages.

38. Defendants' wage theft from employees deprived them of overtime pay under the FLSA in all weeks in which they worked more than 40 hours.

39. Pursuant to the FLSA, Defendants are obligated to pay Plaintiffs at a time and a half rate for all overtime hours worked. Defendants failed to do so.

40. Based on the nature of Plaintiffs' job duties, there is no FLSA exemption that applies to preclude them from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

41. Defendants willfully violated the FLSA by knowingly failing to pay overtime by stealing time from employees and requesting employees work off the clock.

42. At all relevant times Defendants intended to deprive Plaintiffs of the overtime pay they were entitled to under the FLSA, or acted with reckless disregard for Plaintiffs' rights under the FLSA.

43. In or around August 2015, Defendants terminated Jones.

44. Upon information and belief Defendants terminated Jones for reporting unlawful wage theft.

### Representative Action Allegations for FLSA Wage Claims

45. Plaintiffs file this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as representative Plaintiffs on behalf of themselves and others similarly situated. Plaintiffs consent to become party plaintiffs in this representative FLSA action pursuant to 29 U.S.C. § 216(b), as evidenced by Plaintiffs' "Consent to Become Party to Collective Action Under 29 U.S.C. § 216," filed herewith.

46. Upon information and belief, Defendants employ, and have employed, multiple persons who were paid under a similar pay scheme who were paid on an hourly basis, were allowed to work overtime hours off the clock, and/or had hours stolen from paychecks.

47. Upon information and belief, these employees perform, and have performed, work which entitles them to payment of overtime compensation that they have not received.

48. Upon information and belief, Defendants compensated, and continue to compensate, those similarly situated to Plaintiffs on a uniform compensation basis common to Plaintiffs and other persons performing similar job functions.

49. Upon information and belief, Defendants' pay operations are centrally managed as a single enterprise, and all or most of Defendants' employees who are paid similarly to

Plaintiffs are subject to common timekeeping and payroll practices.

50. Upon information and belief, Defendants' executive management has a practice or policy of not paying employees overtime in order to keep costs down and increase their own bonuses. This policy systematically deprives employees of overtime pay.

51. This practice or policy is evidenced by: Hines's statements that executive management must keep costs down in order to receive their bonus and that Jones needed to learn to "play the game;" the ADP Audit Report that showed Executive Director Hines editing employees' time records to steal time; Regional Vice President McElroy's telling Jones's trainer to disbelieve anything Jones said regarding wage theft; McElroy's decision to put Hines in charge of paying employees' back for time that he stole; and Defendants' refusal to respond to employee complaints about wage theft.

52. The FLSA "collective" or "class" of similarly situated employees is composed of all present and former non-exempt employees of Defendants who worked in any Meridian facility under Hines and/or McElroy who have been employed within three (3) years of the date of filing of this action.

53. Defendants' policy of refusing to pay employees for overtime worked and actively stealing time from employees amounted to a willful or reckless disregard of its employees' rights under the FLSA.

54. Defendants had no good faith basis to believe that stealing time from employees and requesting employees work off the clock did not violate the FLSA.

55. Plaintiffs assert that Defendants' willful disregard of the overtime laws described herein entitles Plaintiffs and similarly situated employees to the application of the three (3) year

limitations period.

56. Plaintiffs' job duties, and the job duties or those similarly situated to Plaintiffs, are not exempt from the coverage of the FLSA.

57. At all relevant times, Plaintiffs and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

## COUNT I
### Unpaid Overtime in Violation of the FLSA [Collective Action]

58. Plaintiffs incorporate by reference and re-allege the preceding paragraphs as though fully set forth herein.

59. At all times relevant, Defendants engaged in a pattern or practice of not paying employees for all overtime hours worked.

60. Defendants requested that employees work overtime hours off the clock.

61. Defendants stole time and wages from employees' paychecks, which deprived them of overtime pay in all weeks in which they worked more than 40 hours.

62. At all times relevant, Defendants knew, or should have known, that the FLSA applied to Plaintiffs and others similarly situated.

63. Plaintiffs worked more than 40 hours per week without overtime compensation for all hours worked over 40.

64. Defendants knew of Plaintiffs' hours worked and of its obligation to pay overtime. However, Defendants failed to do so.

## COUNT II
### Breach of Contract

65. Plaintiffs incorporate by reference and re-allege the preceding paragraphs as though fully set forth herein.

66. Plaintiffs and Defendants entered into an employment agreement.

67. Pursuant to the employment agreement, Defendants agreed to compensate Plaintiffs at their specified hourly rate for all hours worked.

68. Plaintiffs performed their obligations under the contract by performing work for Defendants.

69. Defendant altered pay records in order to deprive Plaintiffs of their wages.

70. Defendant breached its contract with Plaintiffs by failing to pay Plaintiffs all wages owed for the work provided.

### COUNT III
### *Quantum Meruit*

71. Plaintiffs incorporate by reference and re-allege the preceding paragraphs as though fully set forth herein.

72. In the alternative to Count III, Plaintiffs seek recovery under the doctrine of *quantum meruit*.

73. During the relevant time period, Plaintiffs provided valuable services to Defendants.

74. Defendants accepted and benefited from the services provided by Plaintiffs and those similarly situated.

75. Defendants knew Plaintiffs, and those similarly situated, expected to be paid for the services provided.

76. Defendants did not pay Plaintiffs, and those similarly situated, for these services.

### COUNT IV
### Violation of Va. Code § 40.1-29

77. Plaintiffs incorporate by reference and re-allege the preceding paragraphs as though fully set forth herein.

78. Defendants have violated Va. Code § 40.1-29 by failing to pay Plaintiffs their wages for all hours worked.

79. Defendants have violated Va. Code § 40.1-29 by deducting wages without Plaintiffs' signed authorization.

80. Pursuant to Va. Code § 40.1-29, Plaintiffs are entitled to the payment of unpaid wages with interest, plus attorneys' fees.

## COUNT V
### Retaliation in Violation of the FLSA [Jones Only]

81. Plaintiffs incorporate by reference and re-allege the preceding paragraphs as though fully set forth herein.

82. Jones engaged in protected activity under the FLSA by complaining about Defendants' unlawful pay practices.

83. Defendants terminated Jones because of his complaints about Defendants' unlawful pay practices.

84. Defendants' actions could dissuade a reasonable worker from making or supporting complaints about overtime.

85. Defendants' actions were willful and not in good faith.

## PRAYER FOR RELIEF FOR COUNT I
(FLSA Unpaid Overtime Claims)

Wherefore, Plaintiffs request the following Relief against Defendants:

    A. money damages for all unpaid overtime compensation;

B.  liquidated damages in an amount equal to all unpaid overtime owed to Plaintiffs;

C.  post-judgment interest;

D.  an order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

E.  injunctive relief including but not limited to: an order permanently enjoining Defendants from retaliating against Plaintiffs; and an order permanently enjoining Defendants from prospectively violating the FLSA with respect to Plaintiffs and the putative collective action members and similarly situated employees;

F.  reasonable attorneys' fees and costs expended in the prosecution of this case;

G.  any and all further relief permissible by law.

## PRAYER FOR RELIEF FOR COUNT II
### (Breach of Contract Claims)

Wherefore, Plaintiffs request the following Relief against Defendants:

A.  a judgment declaring that Defendants have breached their contract with Plaintiffs;

B.  a judgment awarding Plaintiffs actual compensatory damages in the amount shown to be due for unpaid wages;

C.  pre-judgment and post-judgment interest;

D.  other further relief as this Court deems necessary and proper.

## PRAYER FOR RELIEF FOR COUNT III
(*Quantum Meruit* Claims)

Wherefore, Plaintiffs request the following Relief against Defendants:

A. a judgment declaring that Defendants have been unjustly enriched by receipt and enjoyment of services rendered by Plaintiffs without pay and for which payment was expected and requested;

B. a judgment awarding Plaintiffs actual compensatory damages in the amount shown to be due for unpaid wages;

C. pre-judgment and post-judgment interest;

D. other further relief as this Court deems necessary and proper.

## PRAYER FOR RELIEF FOR COUNT IV
(*Va. Code § 40.1-29* Claims)

Wherefore, Plaintiffs request the following Relief against Defendants:

A. a judgment declaring the acts and practices complained of herein are Violations of Va. Code § 40.1-29;

B. a judgment awarding Plaintiffs actual compensatory damages in the amount shown to be due for unpaid wages, with prejudgment interest;

C. an award of attorneys' fees of one-third of the amount set for in the final order and costs incurred on Plaintiffs' behalf;

D. other further relief as this Court deems necessary and proper.

## PRAYER FOR RELIEF FOR COUNT V
(FLSA Retaliation Claim)

Wherefore, Plaintiffs request the following Relief against Defendants:

A. a judgment declaring the acts complained of herein are violation of the

Fair Labor Standards Act, 29 U.S.C. § 215(a)(3);

    B.    award lost wages, liquidated damages, compensatory damages, punitive damages, plus such legal and equitable relief to effectuate the purposes of the act;

    C.    injunctive relief including but not limited to: reinstatement, an order permanently enjoining Defendants from retaliating against Plaintiffs, and an order permanently enjoining Defendants from prospectively violating the FLSA with respect to Plaintiffs and the putative collective action members and similarly situated employees

    D.    reasonable attorneys' fees and costs expended in the prosecution of this case;

    E.    any and all further relief permissible by law.

Plaintiffs respectfully demand **TRIAL BY JURY**.

    Respectfully submitted,

**Timothy Jones and Shemika Brown, on behalf of themselves and others similarly situated**
Plaintiffs

By: _/s/ Philip J. Dean_
Philip Justus Dean (VSB No. 86335)
Craig Juraj Curwood (VSB No. 43975)
Attorneys for Plaintiffs
Curwood Law Firm
530 E. Main Street, Suite 710
Richmond, VA 23219
Telephone: (804) 788-0808
Fax: (804) 767-6777
pdean@curwoodlaw.com
ccurwood@curwoodlaw.com